UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.L., a student, and S.L. and M.L., his parents, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WILLIAMSON COUNTY BOARD OF ) <br> EDUCATION, ) <br> ) <br> Defendant. ) | Case No. 3:23-cv-00516 <br> Judge Aleta A. Trauger |

## MEMORANDUM

The plaintiffs have filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 5), to which the Williamson County Board of Education ("WCBE") has filed a Response (Doc. No. 8), and the plaintiffs have filed a Reply (Doc. No. 9). For the reasons set out herein, the motion will be denied.

## I. BACKGROUND
### A. The IDEA and the *Honig* Process

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C. §§ 1401(3)(A)(i), 1412(a)(1)(A)). The IDEA "contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as [non-disabled] children," but it also permits schooling to be provided in other settings, where necessary. *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,

471 U.S. 359, 369–70 (1985) (citing 20 U.S.C. § 1412(5); 34 C.F.R. §§ 300.132, 300.227, 300.307(b), 300.347)).

The IDEA's definition of "disability" includes a wide array of conditions, from audiovisual impairments to orthopedic limitations to what the Act refers to as "serious emotional disturbance." 20 U.S.C. § 1401(3)(A)(i). Even students with superficially similar diagnoses, moreover, may have strikingly (or subtly) different needs. Accordingly, "[t]he IDEA establishes procedures by which school officials, parents, and the student can collaborate to create" an individualized education program, or "IEP," that takes into account the unique considerations relevant to each child. *Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 432 (6th Cir. 2006) (citing 20 U.S.C. §§ 1401(11), 1414(d); *Town of Burlington*, 471 U.S. at 368).

Ideally, those procedures are designed to result in an IEP that is acceptable to each member of the "IEP team," as that collaborative group is known. Sometimes, however, members of the IEP team have irreconcilable differences that the collaborative process cannot resolve. For such cases, "[t]he IDEA . . . provides for administrative procedures to resolve disputes when the people involved in the creation of an IEP are not able to agree on its substance." *Id.* (citing 20 U.S.C. § 1415(b)); *see* 20 U.S.C. § 1415(b)(6), (f)–(g), (k). If, at the end of the administrative process, the parties still disagree, then any party can seek review "in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A); *see also S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 642–43 (6th Cir. 2008).

A child's education, however, cannot be put on pause for litigation. In recognition of that fact, the IDEA includes what has become known as a "stay-put" provision, which requires that, "during the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree, 'the child shall

2

remain in the then current educational placement.'" *Honig v. Doe*, 484 U.S. 305, 323 (quoting provision now at 20 U.S.C. § 1415(j)) (emphasis omitted); *see also* 34 C.F.R. § 300.518.[1]

That requirement, "read literally," is "unequivocal." *Id.* The Supreme Court has recognized, however, that an entirely unyielding application of the stay-put provision could lead to the "clearly unintended, and untenable, result that school districts must return violent or dangerous students to school while the often lengthy [IDEA] proceedings run their course." *Id.* To avoid that result, the Court has read the IDEA to permit school officials to secure an exception to the stay-put provision "by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Id.* at 328. Such an order is typically referred to as a "*Honig* injunction," after the case in which the Supreme Court first recognized such a rule. *See id.*

**B. This Case**

J.L. is a student in Williamson County, Tennessee. He was born in 2010, and S.L. and M.L are his parents. J.L. has been identified as in need of special education and related services in connection with diagnoses of Disruptive Mood Dysregulation Disorder ("DMDD") and Attention Deficit Hyperactive Disorder ("ADHD"). (Doc. No. 1 ¶ 15.)

For the first few years of J.L.'s schooling, he was educated alongside his peers at Bethesda Elementary, in the Williamson County public school system. His most recent agreed-upon formal IEP—finalized on September 5, 2019—reflected this placement. During the 2019–20 school year, however, a dispute arose between J.L.'s parents and the rest of his IEP team regarding whether that placement could safely continue, in light of J.L.'s history of sometimes-violent outbursts. (*Id.*

---

[1] The stay-put provision also states that, "if [the child is] applying for initial admission to a public school," then the child "shall, with the consent of the parents, be placed in the public school program until all . . . proceedings have been completed." 20 U.S.C. § 1415(j). The plaintiffs in this case do not assert rights pursuant to that aspect of the stay-put provision.

3

¶¶ 17–20.) The parties were unable to agree on a path forward, and J.L. and his parents filed a Due Process Complaint against WCBE on November 3, 2019. (Doc. No. 5-4.)

The plaintiffs' initiation of the IDEA dispute process gave automatic rise to stay-put rights in connection with J.L.'s placement at Bethesda Elementary. Those stay-put rights, however—just like all stay-put rights under the IDEA—was subject to a potential exception in order to ensure the safety of J.L.'s teachers and peers, and, on March 6, 2020, WCBE filed a seaparate Due Process Complaint and Request for Expedited Due Process Hearing for the purpose of seeking a *Honig* injunction. (Doc. No. 5-5.) The question of whether WCBE was entitled to an injunction, however, was never resolved, because, on June 26, 2020, the parties entered into a limited settlement agreement intended to represent a "full and complete resolution of the issues in the pending *Honig* Due Process hearing." (Doc. No. 5-6 at 1 ("*Honig* Settlement").) The parties agreed, pursuant to the *Honig* Settlement, that J.L. would be "place[d] . . . in a temporary homebound placement until a final order is issued, or until the parties enter into a settlement agreement resolving all disputes between them." (*Id.* at 1.) WCBE agreed to provide three weekly homebound instruction sessions, as well as some additional homebound services. (*Id.*) The *Honig* Settlement did not resolve the underlying substantive dispute regarding J.L.'s education—only the stay-put issue. (*Id.*)

On October 14, 2020, however, the parties entered into a second settlement agreement that purported to provide a "full and complete resolution of all issues in" the still-pending IDEA dispute. (Doc. No. 8-6 at 1 ("Global Settlement").) Pursuant to that resolution, WCBE agreed to pay "for the expenses arising from J.L.'s attendance at Robson Academy, a satellite school of Faith Christian Academy." (*Id.* at 1.) That approach—whereby the local public education agency uses available special education funding to support the child's attendance at a private school—is not uncommon and is, in fact, expressly contemplated by the IDEA as a permissible approach. *See* 20

4

U.S.C. § 1412(a)(10)(B)(i); 34 C.F.R. § 300.325(c); *see also St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 171 (2d Cir. 2001). The 2020 settlement agreement, however, complicated that course of action somewhat by including language stating that the parties "acknowledge[d] and agree[d] that this Confidential Settlement Agreement is a resolution of a dispute and not an educational placement under the" IDEA. (*Id.* at 4.) That provision continues:

> The parties agree that this Confidential Settlement Agreement does not create a "stay-put" placement for the purposes of the IDEA or Section 504 of the Rehabilitation Act of 1973. The parties agree that this settlement is solely for the purpose of resolving the dispute between them and in no way constitutes any representation on the part of [WCBE] regarding the educational appropriateness of Robson Academy.

(*Id.* at 4.)

J.L.'s parents enrolled him in Robson Academy, as contemplated by the agreement. J.L.'s disruptive behavior, however, continued. According to a draft IEP[2] formulated in August of 2021, J.L.'s time at Robson Academy was marked by "consistent incidences of flipping tables, ripping paper, swearing, fleeing [the] classroom and hitting the teachers." (Doc. No. 8-7 at 2.) The Academy reported that it had "made adjustments from being in a class with other students to working with [J.L.] one on one," but that the school was ultimately "not being successful in seeing his overall behavior dissipate." (*Id.*) In March of 2021, Robson Academy informed J.L.'s parents that J.L. would no longer be permitted to attend the school. Thereafter, J.L.'s parents enrolled him in an "online homeschool program." (Doc. No. 8-3 at 408.)

J.L.'s IEP team held a meeting on August 3, 2021, to discuss his placement and education for the upcoming school year. J.L.'s parents and the other team members disagreed on a number of issues and were unable to agree on an approach. (Doc. No. 1 ¶ 24.) Nevertheless, shortly

---

[2] The fact that a child is not enrolled in public school does not relieve the State of Tennessee from satisfying its IDEA obligations with regard to that student. *See* 20 U.S.C. § 1412(a)(10)(B)(i).

5

thereafter, J.L.'s parents filled out the necessary paperwork to reenroll J.L. in the WCBE system—specifically, at Spring Station Middle School. (Doc. No. 8-9.)

On August 18, 2021, J.L. and his parents filed a new Due Process Complaint against WCBE. (Doc. No. 5-8.) The parties, however, disagreed regarding which of J.L.'s prior placements was covered by his stay-put rights. J.L.'s parents argued that he still possessed stay-put rights applicable to an in-person placement in WCBE public schools, based on the fact that that was his placement in the last fully agreed-upon IEP, from J.L.'s elementary school days. WCBE, however, argued that the appropriate placement was homebound services, as the parties had agreed in the *Honig* Settlement. On October 13, 2021, WCBE filed an Emergency Motion to Determine Stay-Put Placement, in which it asked the administrative law judge to hold that J.L. had stay-put rights connected to "the homebound placement set out in the June 26, 2020 settlement agreement." (Doc. No. 8-11 at 4–5.) WCBE asserted that "J.L.'s stay-put placement is the last agreed upon placement between the parties, which is homebound." (*Id.* at 4.)

Discussions regarding the matter did not result in an agreed course of action, and, on October 25, 2021, counsel for J.L. and his parents sent the administrative law judge a letter stating the following:

> Per the Court's inquiry earlier today, we inquired whether the Family would be interested in agreeing to a maximum of three hours per week of "homebound instruction" from WCS for [J.L.], without waiving any procedural or substantive allegations at the hearing.
>
> After careful consideration, the Family cannot agree to that arrangement. . . . Instead, the family will be undertaking homeschooling instruction on their own in an effort to create more comparable services for [J.L.'s] needs. Because three hours of homebound per week is not FAPE, and would possibly only complicate what the family will be delivered through homeschooling, they do not request homebound by WCS.

6

(Doc. No. 8-12 at 1.) On March 18, 2022, J.L. and his parents voluntarily withdrew their underlying substantive claims without prejudice to refiling, bringing those IDEA proceedings to an end. (Doc. No. 5-9.)

For the 2022–23 school year, J.L.'s parents enrolled J.L.—now in seventh grade—in another private school, Galileo Academy. Galileo Academy employs a "combination of hybrid and blended learning where students have a . . . flexible format." (Doc. No. 8-3 at 170.) For example, the Academy—which has a physical location but offers all of its "core classes" online— accommodates the schedules of children involved in athletics that require an amount of travel that might interfere with more conventional schooling. (*Id.*) It also works with students whose medical conditions and/or treatments make regular school attendance a challenge. (*Id.* at 171.)

Galileo Academy did not, however, offer the full range of specialized supports that J.L needed as part of its ordinary services covered by tuition. According to the evidence presented to the court, the Academy attempted to work with J.L.'s parents to determine what supports might be necessary and how they might be paid for, but the process eventually broke down without a resolution, and J.L.'s parents withdrew him from the school—which was under the impression that J.L.'s family was moving away, although they ultimately did not. (*Id.* at 180–86.)

In December of 2022, J.L.'s parents reenrolled him in WCBE schools, where again they sought a placement in a general education setting alongside non-disabled peers, accompanied by necessary supports. (Doc. No. 1 ¶ 34.) Again, however, the parties were unable to agree on a course of action. WCBE proposed that J.L.'s renewed enrollment begin with a placement at Spring Station Middle School, where he would, for at least an initial "transition period," be educated "in the special education setting in an independent work space for a shortened school day of 4 hours." (Doc. No. 8-15 at 3.) J.L.'s parents objected to that approach, and, on March 2, 2023, J.L. and his

7

parents filed another Due Process Complaint, which forms the basis for this litigation. (Doc. No. 5-10.) WCBE offered to provide J.L. with homebound services while the matter progressed, but his parents refused, and neither the plaintiffs nor WCBE obtained a preliminary determination whether J.L. was entitled to stay-put rights while the administrative process proceeded. (Doc. No. 8-16 ¶ 3.)

Administrative Law Judge Rachel Waterhouse held a hearing in the matter over the course of three days in early May of 2023. (*See* Doc. No. 5-12 at 1.) On May 17, 2023, Judge Waterhouse issued a 48-page Final Order resolving all of the plaintiffs' claims in WCBE's favor. (*Id.* at 48.) Regarding the issue of J.L.'s stay-put rights, Judge Waterhouse wrote:

> The Petitioners contend that J.L. was entitled to remain in stay put pursuant to the last agreed upon IEP, which they say was September 5, 2019. That IEP provides that J.L. was able to participate with his nondisabled peers in the regular classroom at Bethesda Elementary to the fullest extent. . . . WCS argues that the last agreed-upon placement is homebound and then a transition to a therapeutic day setting. This is because that was the parties' agreement for the start of J.L.'s fifth grade year. Therefore, there was no agreed-upon current educational placement in effect at the time of J.L. 's enrollment (and placement dispute) with WCS in the last two years (sixth or seventh grade).
>
> Stay put was at issue in 2019 during [a] prior due process proceeding. But, in this due process proceeding, the Petitioners did not raise stay put as an issue in the due process complaint, nor in their pre-hearing brief. The Petitioners raised stay put for the first time at the contested case hearing. Thus, WCS argues that it was not on notice of such a claim.
>
> The IDEA allows a student involved in a due process complaint to "remain in his or her current educational placement" during the pendency of due process. The stay put or pendent placement provision is included in the IDEA to protect handicapped children and their parents from being unilaterally stripped of their current agreed upon placement while a proposed placement is being challenged through due process. *Honig v. Doe*, 484 U.S. 305, 323 (1988). When determining placement for the purposes of stay put, the Sixth Circuit has held that the definition of "placement" requires the school district to approve the educational setting at some point. *N.W. v. Boone Cnty. Ed. of Educ.*, 763.F.3d 6 11,617 (6th Cir. 2014).
>
> This poses an interesting issue since J.L. has not been enrolled at WCS since 2019. In 2019, J.L. was in elementary school and he has since progressed to middle

8

> school. Nor has he been in a classroom setting or under an IEP since that time[.] [R]ather, he has been in smaller, mostly one-on-one, educational settings unilaterally chosen by his parents outside of the WCS.
>
> It is illogical to argue that the September 5, 2019, IEP placement should apply here since that IEP included an agreed upon placement at Bethesda Elementary and J.L. is now in middle school. Therefore, that argument is rejected.
>
> Further, J.L.'s parents unilaterally placed him in a private school, Galileo, immediately prior to re-enrolling him with WCS. Thus, J.L. entered WCS as a unilaterally placed private school student without an IEP in place. Therefore, the parents waived the IDEA's stay put provision by unilaterally placing J.L. in private school without an IEP.
>
> Lastly, this Final Order rules in favor of WCS. As such, WCS is the prevailing party in this matter and stay put is moot. *Patrick G. v. Harrison School*, 40 F.4th 1186, 1213-15 (6th Cir. 2022). It is **DETERMINED** that any issue relating to the IDEA's stay put provision is not viable.

(Doc. No. 5-12 at 44–46 (footnote omitted, citations reformatted).)

On May 22, 2023, the plaintiffs filed their Complaint in this court, seeking review of Judge Waterhouse's conclusions. (Doc. No. 1.) The next day, the plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to the "Stay Put" Provision of the IDEA, in which they requested an "injunction returning [J.L.] to . . . the regular education classroom with his peers" with certain additional supports to which J.L. claims to be immediately entitled. (Doc. No. 5 at 3.) J.L. has an immediate right to that placement, the plaintiffs argue, because it is the only placement consistent with J.L.'s last mutually agreed-upon IEP. (*Id.* at 2.)

WCBE opposes the motion on the grounds that (1) the plaintiffs failed to exhaust or, in the alternative, waived any assertion of stay-put rights through their actions in front of Judge Waterhouse; (2) the stay-put provision does not apply to J.L.'s current situation, given that he was long-ago withdrawn from WCBE schools; and (3) insofar as the stay-put provision applies, it should be interpreted to apply to J.L.'s homebound placement, not his placement in physical WCBE schools. (Doc. No. 8 at 1–2.)

9

## II. LEGAL STANDARD & ANALYSIS

The stay-put provision of the IDEA creates a substantive right distinct from the ordinary right to request a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Accordingly, while this motion is styled as a request for a temporary restraining order or preliminary injunction, the court's inquiry is not governed by the factors "ordinarily required" in connection with such a motion. *Williamson Cnty. Bd. of Educ. v. C.K.*, No. 3:07-0826, 2007 WL 3023616, at *6 (M.D. Tenn. Oct. 11, 2007) (Echols, J.).

In particular, requests for preliminary relief under Rule 65 typically require the court to delve deeply into a plaintiff's substantive claims to determine his likelihood of success on the merits. *See Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.") (citation omitted). The stay-put provision, in contrast, offers temporary protection regardless of the merits of the underlying claims, and it applies automatically, unless the defendants can establish an exception or the plaintiffs are—as WCBE argues is the case here— asserting rights in excess of what the stay-put provision actually requires. The court, accordingly, will consider the parties' arguments in the context of the stay-put provision and the applicable caselaw, rather than Rule 65, with a focus on the two issues raised by the parties: (1) whether J.L. has adequately preserved his assertion of stay-put protection in these proceedings; and (2) whether his stay-put rights entitle him to recognition of his 2019 IEP placement.

### A. Waiver/Exhaustion

The IDEA requires that plaintiffs first exhaust the available administrative procedures before seeking relief. 20 U.S.C. § 1415(i)(2); *see also S.E.*, 544 F.3d at 642. Based on the information before the court, it appears that J.L. and his parents complied with that requirement

with regard to their substantive claims. WCBE argues that the plaintiffs did not, however, specifically exhaust the issue of whether J.L. was entitled to stay-put protection and, if so, which of his earlier placements would be the relevant one in which to "stay put." WCBE argues that it would therefore be inappropriate for the court to consider that issue now. The text of the IDEA provides little, if any, meaningful guidance regarding the extent to which specific exhaustion is required with regard to stay-put rights, and WCBE has not identified any caselaw addressing—let alone resolving—the question.

Without wading into that broader set of issues, the court holds that there was no inexcusable waiver or failure to exhaust here. The judicial review provision of the IDEA defines that cause of action in terms of the plaintiff's being "aggrieved by the findings and decision made" by the administrative law judge, 20 U.S.C. § 1415(i)(2)(A), and Judge Waterhouse plainly made a ruling regarding the stay-put provision—even if that ruling was only made, on the record, alongside her ultimate resolution of J.L.'s claims. Although Judge Waterhouse, like WCBE, noted that J.L. arguably was not diligent in pursuing any stay-put rights at the administrative level, she elected, in her discretion as the presiding administrative law judge, to treat the issue as properly before her, and this court sees no basis for second-guessing that decision, in the absence of clear authority establishing that it was in error. Because the issue of stay-put rights was considered as appropriate for resolution by the administrative law judge and was timely raised before this court, the court will consider the merits of J.L.'s stay-put request, without making any broader ruling regarding the extent to which specific exhaustion was required.

### B. Stay-Put

In terms of the plain text of the IDEA, J.L.'s argument that he is entitled to stay-put rights in connection his 2019 placement is unconvincing. The IDEA states that, unless a child is

11

Case 3:23-cv-00516 Document 27 Filed 07/12/23 Page 11 of 18 PageID #: 3612

"applying for initial admission to a public school," then his stay-put rights apply to his "then-current educational placement"—that is, his placement at the time of the IDEA dispute that triggered the stay-put provision. 20 U.S.C. § 1415(j). The plaintiffs do not argue that J.L. is "applying for initial admission," presumably because (1) he has been enrolled in WCBE schools before and (2) he is not simply seeking enrollment in a general education setting, in and of itself, but an enrollment with supports, as addressed by his 2019 IEP, which he could not claim pursuant to stay-put if he were being treated as a wholly new student. (*See* Doc. No. 5-1 at 6–7.) Accordingly, the plaintiffs rely solely on the protection afforded to a student's "then-current educational placement." J.L.'s 2019 enrollment alongside his non-disabled peers has not been "current," by any reasonable definition of the word, for years. The text of the stay-put provision itself, therefore, appears to provide a fairly straightforward answer to the questions posed by this situation.

Nevertheless, as the Supreme Court held in *Honig*, the broad, general language of the stay-put provision has sometimes required courts to look closely at its function, within the broader IDEA structure, to determine how the provision should apply to out-of-the-ordinary situations. It is, therefore, at least *conceivable* that the stay-put provision could grant J.L the rights he asserts, even if its plain text suggests otherwise, based on the interpretations of that provision set forth in caselaw and/or the specialized purpose and meaning of the provision in its full statutory context.

In support of the plaintiffs' position, they rely on the Sixth Circuit's opinion in *N.W. ex rel. J.W. v. Boone County Board of Education*, 763 F.3d 611 (6th Cir. 2014), as well as a later, unreported opinion, *Simpson-Vlach v. Michigan Department of Education*, No. 22-1724, 2023 WL 3347497 (6th Cir. May 10, 2023), applying that case. *N.W.* involved claims raised by parents who had unilaterally removed their disabled child, N.W., from the private school covered by his IEP,

12

St. Rita's School for the Deaf, to another private school, Applied Behavioral Services ("ABS"). The plaintiffs sought to have ABS treated as N.W.'s "current educational placement" rather than having N.W. placed in a public school, New Haven Elementary. *Id.* at 617. The Sixth Circuit began its analysis by observing that "[t]he IDEA does not provide a definition for 'current educational placement'" and that, "[f]aced with this problem, [the court] would usually give the term its ordinary meaning." *Id.* (citation omitted). The court concluded, however, that its reading of the IDEA should also take into account Department of Education regulations that define a "placement" not merely as the school that the child happens to be attending at any given time, but as a determination "made by" the child's IEP team in conformity with the IDEA. *N.W.*, 763 F.3d at 617 (quoting 34 C.F.R. § 300.116(a)). The Sixth Circuit concluded that "[t]hese definitions indicate that the school district must, in some fashion, approve of the placement decision and that the parents cannot unilaterally decide upon which school will serve as the child's 'placement.'" *Id.*

All of that reasoning is consistent with the administrative law judge's determination that J.L. is not entitled to the stay-put rights that he claims in this case. WCBE is not arguing that it or anyone else had the unilateral right to change J.L.'s placement. Rather, WCBE is arguing that (1) J.L. has repeatedly been placed in other educational settings since 2019, including through agreement of the parties, making that placement no longer "current"; and, (2) just as a student's parents cannot unilaterally establish a new "current educational placement," they cannot unilaterally preserve one, well after its expiration, just by avoiding the final adjudication of any IDEA claim for a period of years. Those arguments are consistent with the general approach espoused by the Sixth Circuit in *J.W.*

Nevertheless, the plaintiffs argue that *J.W.* supports their position based on the following passage:

> N.W.'s parents argue that using any placement besides ABS would result in absurdity because N.W.'s placement would be a school that he has never attended. Indeed, it would be odd to label New Haven Elementary as N.W.'s placement for stay-put purposes because it is logically dubious to stay in a school that you have never attended. The answer to this wrinkle, however, is that N.W.'s placement—for purposes of the stay-put provision—is the *last agreed-upon school that N.W. attended*: St. Rita's. The District and N.W.'s parents explicitly agreed to his placement there. Moreover, the IDEA allows for public school districts to agree to placements in private schools. *See* 20 U.S.C. § 1412(a)(10). Thus, classifying St. Rita's as N.W.'s placement comports with the statute and regulations, and it eliminates the alleged absurdity. Unfortunately for N.W.'s parents, it also undermines their argument that ABS is N.W.'s placement.

*Id.* at 618 (emphasis added) (citations to briefs omitted). The unreported *Simpson-Bloch* opinion summarized this holding generally as establishing that a "student's current . . . placement is the educational placement in the student's last agreed-upon IEP." *Simpson-Vlach*, 2023 WL 3347497, at *5. The plaintiffs argue, based on that language, that J.L. has retained a right to assert stay-put protection in connection with his 2019 IEP, because, while that IEP is no longer in practical effect, it has never been formally superseded.

The plaintiffs' argument fails for multiple reasons. First, as WCBE points out, *N.W.* does not actually say that an arrangement must be memorialized in an IEP to qualify as a "placement" for the purposes of the stay-put provision—only that the arrangement be *agreed upon*. J.L.'s last such fully agreed-upon placement was his homebound placement pursuant to the *Honig* Settlement, which, unlike the Global Settlement, included no disclaimer that the agreed-to option was not a "placement" for stay-put purposes. Although that placement was not in an IEP, it was still reached through the ordinary IDEA process—specifically, through a settlement. The plaintiffs may complain that that placement was expressly "temporary," but the stay-put provision requires only that the relevant placement be "current"; it says nothing about its being permanent. All

14

educational placements are, after all, temporary, and nothing in *N.W.* suggests that some special level of permanence is required for a placement to be the correct one for "stay-put" purposes. Rather, *N.W.* was focused on whether the relevant placement was agreed upon, which J.L.'s homebound instruction was. Insofar as *N.W.* can be read to control this case, then, its rule supports WCBE's position, not the plaintiffs'.

Moreover, even if the language in *N.W.* could, in isolation, be construed to announce a broader rule than its ultimate holding suggests, it would be a misuse of precedent to treat that broad reading as dispositive of the distinct issues raised by this case. Judicial opinions frequently include broad, general statements that, although they are unproblematic in context, can be construed in ways that neither the court nor the litigants anticipated or intended. In order to determine whether such a statement is actually a precedential holding, the court typically must "ask whether the questionable language is essential to the holding's reasoning." *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 836 (6th Cir. 2019) (citing *Tyler v. Cain*, 533 U.S. 656, 663 n.4 (2001)). Even if language in the *N.W.* opinion could, taken in isolation, be construed broadly, it would not resolve this case, because the actual issue presented in *N.W.*—whether parents may seek stay-put protection in association with a unilateral private school placement—did not call on the Sixth Circuit to resolve any of the questions raised here. The same is true with regard to *Simpson-Vlach*, which, even if it were a published decision, would not govern this case because it involved an even more distinguishable issue and addressed these questions only in passing. *See Simpson-Vlach*, 2023 WL 3347497, at *5 (noting that the "plaintiffs are not asking the court to invoke the stay-put provision based on the current litigation").

Another problem with the plaintiffs' argument is that *N.W.* was a case about the definition of "placement," but this dispute is about the definition of "current." The parties agree that J.L.'s

15

enrollment in Bethesda Elementary was a "placement" according to the IDEA definition of the term. The issue presented by these facts is that that placement is not "current," as that term is typically used—and has not been for a long time. The Sixth Circuit was clear, in *N.W.*, that it was relying on the specialized definition of "placement" in 34 C.F.R. § 300.116 and that, in the absence of that specialized regulatory definition, it would simply apply the ordinary meaning of the relevant language. The ordinary meaning of "current," however, supports WCBE's position.

It may be that "current" does have a somewhat complicated meaning under the stay-put provision in some cases, such as those that straddle the student's advancement from one level of schooling to another or that overlap with the reorganization of a school or school system. Indeed, as the plaintiffs point out, the holding in *J.W.* does suggest that a placement can be "current," even if it was not necessarily recent—if there was no intervening agreed placement. The fact that time has passed and J.L. is now a middle schooler, however, is far from the only reason that his Bethesda Elementary enrollment is not a "current" placement. There is also the larger problem that he has had multiple other sets of educational arrangements in the interim, including some that were instituted in connection with binding settlement agreements.[3]

"The purpose of the [stay-put] provision is 'to maintain the educational status quo while the parties' dispute is being resolved.'" *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014)). J.L.'s placement in a WCBE general education classroom was the status quo for the purposes of the pendency of the plaintiffs' IDEA claims that were raised in 2019—and for WCBE's distinct

---

[3] Indeed, insofar as one wishes to look to the *dicta* of *J.W.* for guidance on this question, it is impossible to ignore the fact that the Sixth Circuit, in *J.W.*, expressly agreed that "it is logically dubious to stay in a school that you have never attended." N.W., 763 F.3d at 618. It is no less logically dubious to suggest that J.L. can "stay put" at a middle school he never attended, based on an elementary school enrollment that was several IDEA disputes ago.

16

assertion of *Honig* in its own case initiated in 2020. Each of those disputes, however, was settled, and each settlement instituted an intervening educational arrangement—including one that was not subject to any disclaimer regarding its status under the stay-put provision. Then the plaintiffs initiated yet another IDEA proceeding, in which J.L.'s placement and stay-put rights were placed at issue yet again, but, rather than seeing that process through, the plaintiffs withdrew their claims and elected to pursue yet another intervening educational setting, at home. Then, J.L.'s parents tried yet another option, Galileo Academy, after which they finally came back to WCBE.

There is simply no reasonable reading of those events that would support the conclusion that forcing WCBE to immediately integrate J.L. into a general education classroom now would be preserving his educational *status quo*. To the contrary, such a ruling would, in effect, amount to granting J.L. new educational rights that he has been markedly unable to demonstrate that he is entitled to on a number of occasions—rights that then might be just as quickly withdrawn from him if he does not prevail in this litigation. If the text, structure, or purpose of the IDEA called for such a counterintuitive approach, then the court would comply. In the absence of such authority, however, the court has no power to require WCBE to pretend that none of the events that have taken place since 2019 occurred and that J.L. has effectively been "placed" in an ordinary WCBE classroom, with the supports he desires, for this entire time, even though he has not. The court, accordingly, will deny the plaintiffs' motion in full.

### III. CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 5) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge