UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.L., a student, and S.L. and M.L., his parents,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAMSON COUNTY BOARD OF EDUCATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:23-cv-00516<br>) Judge Aleta A. Trauger<br>)<br>)<br>)<br>) |

## MEMORANDUM & ORDER

The plaintiffs have filed a Motion for Reconsideration or for Injunction Pending Appeal Pursuant to the "Stay Put" Provision of the IDEA (Doc. No. 29), to which the Williamson County Board of Education ("WCBE") has, at the direction of the court, filed a Response (Doc. No. 31), and the plaintiffs have filed a Reply (Doc. No. 32). For the reasons set out herein, that motion will be denied.

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case.") (citing *Rodriguez*, 89 F. App'x at 959; *Mallory*, 922 F.2d at 1282). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank N.A. v. FDIC*, 857 F.Supp. 976, 981 (D.D.C.1994)) (internal brackets omitted). Courts traditionally will find

justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7.

The plaintiffs argue that the court clearly erred in its denial of their Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 5), which the court found to be unsupported because the plaintiffs, relying on 20 U.S.C. § 1415(j), were seeking an order permitting J.L. to "stay put" in a "then-current educational placement" that was not, by any reasonable definition of the term, "then-current" when the relevant proceedings were initiated.[1] (Doc. No. 27 at 17.) Specifically, the plaintiffs argue that the court clearly erred in concluding that *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 618 (6th Cir. 2014), "does not actually say that an arrangement must be memorialized in an IEP to qualify as a 'placement' for the purposes of the stay-put provision." (Doc. No. 27 at 14.) The plaintiffs argue that *J.W.* should be read to dictate that a "placement" must comply with the requirements of 34 C.F.R. § 300.116(b), which, among other things, describes a placement as "based on the child's IEP." 34 C.F.R. § 300.116(b)(2). Accordingly, the plaintiffs argue, the stay-put provision protects whatever arrangement last appeared in an IEP, no matter how old or what the child's education consisted of in the interim.

---

[1] The court notes, as it did in its original opinion, that the plaintiffs have made no attempt to assert stay-put rights based on J.L.'s status as a "child . . . applying for initial admission to a public school." 20 U.S.C. § 1415(j). (*See* Doc. No. 27 at 12 ("The plaintiffs do not argue that J.L. is 'applying for initial admission,' presumably because (1) he has been enrolled in WCBE schools before and (2) he is not simply seeking enrollment in a general education setting, in and of itself, but an enrollment with supports, as addressed by his 2019 IEP, which he could not claim pursuant to stay-put if he were being treated as a wholly new student.").

2

The plaintiffs' argument fails for several reasons. First, they are simply wrong about what *N.W.* says. The plaintiffs continue to assert not only that *N.W.* can be read to support their position—which it can, although the court does not find that reading convincing—but that it actually directly endorses the principle that a stay-put placement must be based on an IEP, which it simply does not. (*See* Doc. No. 32 at 5.) The plaintiffs' counsel relies on misleadingly truncated quotes to suggest otherwise, but, in context, it is entirely clear and explicit that, each time the court passingly mentions the phrase, "based on the child's IEP" it is describing the contents of 34 C.F.R. § 300.116(b)—not issuing a holding about the stay-put provision. *See N.W.*, 763 F.3d at 617.

The Sixth Circuit did, as this court has already noted, look to 34 C.F.R. § 300.116(b) to inform its construction of the stay-put provision, but nothing in the opinion states that every requirement touched on by 34 C.F.R. § 300.116(b) is incorporated into the relevant definition of "placement." Rather, the court looked to that regulation to guide it in answering a specific question: whether a placement could be established unilaterally by a child and his parents. *See N.W.*, 763 F.3d at 617. The Sixth Circuit did not hold, however, that the stay-put provision includes an IEP requirement. To the contrary, the court explicitly stated that, in order for an arrangement to qualify as a "placement," "the school district must, *in some fashion*, approve of the placement decision." *N.W.*, 763 F.3d at 617. If anything, that would seem to be an express repudiation of the premise that only an IEP can create a new placement.

Moreover, the court has already expressly held that, "[e]ven if language in the *N.W.* opinion could, taken in isolation, be construed" in the manner that the plaintiffs suggest, "it would not resolve this case, because the actual issue presented in *N.W.*—whether parents may seek stay-put protection in association with a unilateral private school placement—did not call on the Sixth Circuit to resolve any of the questions raised here." (Doc. No. 27 at 15.) In other words, even if

3

*N.W.* said what the plaintiffs argue that it does, it would have done so in *dicta*, not its holding, and the court therefore would, at most, be guided by that language, not bound by it. *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 836 (6th Cir. 2019) (citing *Tyler v. Cain*, 533 U.S. 656, 663 n.4 (2001)). In contrast, the court *is* bound by the actual language of the IDEA, which favors WCBE's position.

Finally, as the court originally stated, it did not base its conclusion simply on the definition of "placement," but also on the definition of "current." (Doc. No. 27 at 15–16.) The stay-put provision, which applies "during the pendency of any proceedings conducted pursuant" to the IDEA, protects only the "then-current educational placement." 20 U.S.C. § 1415(j). The definition of "placement" is only relevant to this case insofar as one of the post-2019 agreements between the plaintiffs and WCBE might have superseded the 2019 status quo, making the 2019 placement no longer "current." But being superseded is not the only way that the 2019 placement might have lost its "current" status. Something can cease to be current without actually being replaced—just as a person who quits one job without going to another has no current employment, or a person who obtains a divorce but does not remarry has no current spouse.

For the same reasons, the most natural reading of the applicable language is that, when the underlying IDEA proceedings were initiated, J.L. did not have a current placement in a WCBE classroom because his parents voluntarily and repeatedly placed him in other educational arrangements in the intervening years. *See Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 651 (3d Cir. 2000) ("[W]here a parent unilaterally removes a child from an existing placement determined in accordance with state procedures, and puts the child in a different placement that was not assigned through proper state procedures, the protections of the stay-put provision are inoperative until the state or local educational authorities and the parents agree on a

4

new placement.") (citation omitted). That would be true whether or not any other, later arrangement qualified as a superseding placement.

As WCBE correctly observes—and contrary to the plaintiffs' characterization—this court did not affirmatively hold that any of J.L.'s intervening arrangements was a protectable "placement" for stay-put purposes. The court recognized that the homebound arrangement agreed to in 2020 *might* qualify, but that is not a question that the court has been called on to answer. The only question before the court was whether the 2019 placement was entitled to stay-put protection, which it was not. Whether that is because the 2019 placement was superseded by a later placement, or simply because it was relinquished by the plaintiffs' intervening actions, makes no difference for the purposes at hand. What matters is that the plaintiffs were seeking to enforce rights that they do not have. The court therefore denied their motion, and it will not revise that conclusion now.

The plaintiffs have asked the court, in the alternative, to grant them the relief they seek while they pursue an appeal. Because the court has already determined that the plaintiffs are not entitled to a stay-put injunction, the court will evaluate that request as an ordinary request for preliminary injunctive relief. "Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948 (3d ed. & Supp. 2019)). The district court must "weigh the strength of the four [preliminary injunction] factors against one another," with the qualification that irreparable harm is an "indispensable" requirement, without which there is "no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327 (citing *Friendship Materials, Inc. v. Mich. Brick,*

5

*Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Similarly, "a finding that there is simply no likelihood of success on the merits is usually fatal" to a request for preliminary injunctive relief. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

The plaintiffs have not established a sufficient likelihood that they will prevail on any of their claims. Indeed, the plaintiffs' briefing has made no argument to that effect at all, apparently due to the fact that they believe that the stay-put provision excuses them from that requirement. The very decision that the plaintiffs wish to appeal, however, is the court's unrevised holding that the stay-put provision does not grant the plaintiffs the rights they seek. The plaintiffs were therefore required to demonstrate a sufficient likelihood of success, just like any other plaintiff without a distinct statutory right to preliminary relief separate from the ordinary procedures set forth by the Federal Rules. They have not do so.

As for the harms and equities, the court does not doubt the sincerity or strength of the plaintiffs' belief that J.L. will be harmed by every day that he is kept out of their preferred educational setting. J.L., however, is neither the only student nor the only person involved in this situation. All of the evidence before the court suggests that J.L. has exhibited a recurring and difficult-to-constrain pattern of disruptive and violent behavior, particularly toward his teachers. That tendency was undoubtedly troubling enough when he was in elementary school, but it is all the more so now that he is beginning his teens. The plaintiffs, however, have made no showing that J.L. can be safely integrated into a general education classroom with the immediacy they seek, and the court will not roll the dice with the safety of WCBE's teachers and other students based only on the speculative possibility that the plaintiffs will ultimately prevail.

For the foregoing reasons, the plaintiffs' Motion for Reconsideration or for Injunction Pending Appeal Pursuant to the "Stay Put" Provision of the IDEA (Doc. No. 29) is hereby **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

7

Case 3:23-cv-00516   Document 33   Filed 07/28/23   Page 7 of 7 PageID #: 3662